596 So.2d 1005 (1992)
Michael LIPOF, Petitioner,
v.
FLORIDA POWER AND LIGHT COMPANY, Respondent.
No. 76083.
Supreme Court of Florida.
February 20, 1992.
Rehearing Denied May 12, 1992.
*1006 Michele K. Feinzig of Tripp, Scott, Conklin & Smith, Fort Lauderdale, for petitioner.
Paul R. Regensdorf of Fleming, O'Bryan & Fleming, Fort Lauderdale, for respondent.
HARDING, Justice.
We have for review Lipof v. Florida Power & Light Co., 558 So.2d 1067 (Fla. 4th DCA 1990), in which the Fourth District Court of Appeal certified the following question as one of great public importance:
WHETHER AN EMPLOYER IS OBLIGATED TO PROVIDE AN EMPLOYEE WITH THE OPPORTUNITY TO ACCEPT OR REJECT UNINSURED MOTORIST INSURANCE, WHERE THE EMPLOYER PROVIDES THE EMPLOYEE, THROUGH HIS EMPLOYMENT CONTRACT, WITH INSURANCE IN COMPLIANCE WITH THE FLORIDA FINANCIAL RESPONSIBILITY LAW AND THE FLORIDA AUTOMOBILE REPARATIONS REFORM ACT AND WITH OTHER INDEMNITY AND INSURANCE COVERAGES ON THE EMPLOYEE'S PERSONAL VEHICLE WHICH IS USED BY THE EMPLOYEE IN THE EMPLOYER'S BUSINESS?
Id. at 1068. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution, and we answer the question in the negative.
Florida Power and Light Company (Florida Power) hired Michael Lipof (Lipof) in 1981 as a meter reader and bill deliverer. As part of an employment contract, Florida Power arranged for insurance coverage on Lipof's personal vehicle while he remained employed with Florida Power. In substance, Florida Power agreed to provide the following: (1) compliance with section 324.031, Florida Statutes (1983) (of the Florida Financial Responsibility Law); (2) compliance with sections 627.730-.7405, Florida Statutes (1983) (of the Florida Automobile Reparations Reform Act[1]); (3) excess indemnity protection, for the benefit of the Company and Employee, with a combined bodily injury and property damage limit of $500,000; and (4) fire, theft, comprehensive protection, and full collision or upset protection. Lipof and Florida Power shared equally the costs of the excess indemnity protection. Finally, the agreement stated that Lipof rejected uninsured motorist coverage, and authorized Florida Power to convey this rejection.[2]
In 1983, Lipof suffered serious injuries in an automobile accident with an under-insured vehicle. After exhausting his $10,000 personal injury protection coverage, Lipof sued Florida Power seeking declaratory relief regarding insurance coverage provided by the agreement. Florida Power moved for summary judgment on the basis that it did not owe Lipof the duty of offering uninsured motorist coverage because it is "not an insurer or insurance company as recognized by sections 627.733 and 324.031, Florida Statutes (1983), and because of [Florida Power's] status as a self-insurer." Lipof, 558 So.2d at 1067-1068. The Fourth District Court of Appeal affirmed the trial court's summary judgment for Florida Power on the basis that "[s]elf insurance is not considered a `policy' of insurance, *1007 therefore, the requirements in section 627.727, Florida Statutes (1983), are inapplicable to self-insurers." Id. at 1068.
The issue presented in this case is whether Florida Power became Lipof's "insurer" through the employee vehicle agreement, thereby, creating a duty to offer uninsured motorist coverage as required by section 627.727.
Lipof argues that Florida Power acted as an "insurer" under section 624.03, Florida Statutes (1983), which broadly defines "insurer" as including "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity." Lipof contends that Florida Power acted as an indemnitor through the employee vehicle agreement in three different ways: (1) compliance with section 324.031; (2) compliance with sections 627.730-.7405; and (3) providing $500,000 indemnification for bodily injury and property damage in addition to the fire and theft insurance. Based upon these benefits, Lipof concludes that the agreement is a "motor vehicle liability policy," and thus, Florida Power had a statutory duty to offer uninsured motorist coverage pursuant to section 627.727. In response, Florida Power disputes that the agreement became a "motor vehicle liability policy," and therefore, concludes it never owed Lipof the duty to offer uninsured motorist coverage.
We first address Lipof's argument that the agreement became a "motor vehicle liability policy," because Florida Power provided compliance with section 324.031 of the Florida Financial Responsibility Law. Section 324.031 provides four methods for proving financial responsibility. The statute reads as follows:
The operator or owner of a vehicle may prove his financial responsibility by:
(1) Furnishing satisfactory evidence of holding a motor vehicle liability policy as defined in s. 324.021(8) and s. 324.151, or
(2) Posting with the department a satisfactory bond of a surety company authorized to do business in this state, conditioned for payment of the amount specified in s. 324.021(7), or
(3) Furnishing a certificate of the department showing a deposit of cash or securities in accordance with s. 324.161, or
(4) Furnishing a certificate of self-insurance issued by the department in accordance with s. 324.171.
§ 324.031, Fla. Stat. (1983). Lipof contends that as the "owner or operator" of the vehicle he chose to use the agreement as a "motor vehicle liability policy," pursuant to section 324.031(1).
Section 324.031(1) refers to sections 324.021(8) and 324.151, Florida Statutes (1983), which define the requirements for a "motor vehicle liability policy." Section 324.021(8) defines "motor vehicle liability policy" as "issued by any insurance company authorized to do business in this state." Although section 624.03 defines "insurer" broadly, the language of section 324.021(8) limits motor vehicle liability policies to those policies issued by insurance companies. Florida Power is not an insurance company authorized to do business in the state. Thus, the agreement cannot be characterized as a "motor vehicle liability policy" within the meaning of sections 324.021(8) or 324.031. Therefore, section 627.727, which requires uninsured motorist coverage for motor vehicle liability insurance policies, does not apply to Florida Power.
Lipof acknowledges that Safeco Insurance Company of America issued him a "Florida Automobile Insurance Identification Card" indicating that he had "Bodily Injury Liability Coverage" pursuant to a surety bond. Section 324.031(2) provides that posting a surety bond is a means of proving financial responsibility. Agreeing to provide Lipof's compliance with section 324.031 through the surety bond with Safeco is not the same as "issuing" an insurance policy under section 324.021(8). Thus, Florida Power is not an "insurer," and is not under a statutory obligation to offer uninsured motorist coverage to Lipof.[3]
*1008 Lipof's second argument is that the agreement became a "motor vehicle liability policy" because Florida Power provided for his compliance with the Florida Motor Vehicle No-Fault Law. Section 627.733(3)(b), Florida Statutes (1983), states that a person providing security authorized by section 324.031(2), (3), or (4) for compliance with the Florida No Fault Law has all the "obligations and rights of an insurer under ss. 627.730-627.7405." As specified by the legislature, these specific obligations and rights do not include offering uninsured motorist coverage as required by section 627.727. This Court is not free to expand these rights to encompass uninsured motorist coverage.
Finally, Lipof argues the agreement became a "motor vehicle liability policy" through the indemnity agreement between the parties. The agreement, however, reveals that Florida Power and Lipof agreed to share equally in the purchase of the indemnification insurance. The agreement does not suggest that Florida Power has become an "insurer" for Lipof. Thus, the statutes do not impose a duty on Florida Power to offer uninsured motorist coverage.
We recognize there may be strong policy reasons for requiring employers, who provide employees with bodily liability coverage on their personal vehicles, also to offer uninsured motorist coverage. However, such a decision must come from the legislature and not from this Court. Accordingly, we answer the certified question in the negative, and approve the decision below.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The legislature changed the title of sections 627.730-.7405, Florida Statutes (1981), to the "Florida Motor Vehicle No-Fault Law." See Ch. 82-243, § 549, Laws of Fla.
[2] The instant case comes to this Court on the affirmance of a summary judgment. The lower courts found that Florida Power is not an insurer, and therefore does not owe Lipof the duty to offer uninsured motorist coverage. Consequently, the effect of Lipof's waiver was never made an issue to be resolved by this Court. Furthermore, our holding eliminates the need for us to address the validity of the waiver.
[3] The Fourth District Court of Appeal addressed the issue of Florida Power's duty as a self-insurer. Under section 324.031(4), Florida Statutes (1983), a person may prove financial responsibility by furnishing a certificate of self-insurance issued by the department. The record before us does not reflect that Florida Power complied with section 324.031 in this manner. Thus, we do not reach the issue of whether the law requires a self-insured employer who offers an employee compliance with section 324.031 to also offer the employee uninsured motorist coverage.