753 So.2d 80 (2000)
Juan YOUNG, et al., Petitioners,
v.
PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, Respondent.
No. SC93544.
Supreme Court of Florida.
February 10, 2000.
Rehearing Denied April 20, 2000.
*81 Anthony T. Martino of Clark, Charlton, Martino & Borders, P.A., Tampa, Florida; and Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa, Florida, for Petitioners.
Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, Florida, for Respondent.
Louis K. Rosenbloum, Pensacola, Florida, for the Academy of Florida Trial Lawyers, Amicus Curiae.
PARIENTE, J.
We have for review a decision passing upon the following question certified to be of great public importance:
IS A POLICY PROVISION WHICH EXCLUDES A VEHICLE OWNED OR OPERATED BY A SELF-INSURER FROM THE DEFINITION OF "UNINSURED MOTOR VEHICLE" FOR PURPOSES OF UNINSURED/UNDERINSURED MOTORIST COVERAGE PERMISSIBLE UNDER FLORIDA LAW AND PUBLIC POLICY?
Young v. Progressive Southeastern Ins. Co., 712 So.2d 460, 461 (Fla. 2d DCA 1998). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative because the exclusion, which operates to prevent an insured from seeking either uninsured or underinsured motorist coverage under his or her insurance policy when the tortfeasor elects to be self-insured, is impermissible under Florida's uninsured motorist statutory scheme and the policy underlying that statute.

*82 BACKGROUND
The petitioner, Juan Young, was stopped at a red light when he was struck from behind by a sheriff's vehicle owned by the Hillsborough County Sheriff's Office. Subsequently, Young and his wife sued the Sheriffs Office for damages. The Sheriffs Office was self-insured up to $100,000 per person and $200,000 per occurrence.
The Youngs alleged that their damages exceeded the limits of self-insurance established by the Sheriff's Office. Accordingly, the Youngs also filed suit against the respondent, Progressive Southeastern Insurance Company (Progressive), who had issued them an insurance policy providing uninsured/underinsured motorist coverage in the amount of $25,000.
In its answer, Progressive raised as an affirmative defense that a tortfeasor such as the Sheriff's Office who is self-insured does not qualify as either an uninsured or underinsured motorist. Progressive further asserted that the language of its uninsured motorist policy specifically excluded uninsured or underinsured motorist coverage when the tortfeasor's vehicle was self-insured:
[A]n uninsured motor vehicle does not include any vehicle:
... d. Owned by or operated by a self-insurer as contemplated by any financial responsibility law, motor carrier law, or similar law.
(Emphasis supplied.) On this basis, Progressive moved for summary judgment, which the trial court granted.
On appeal, the Second District affirmed the order granting summary judgment on the authority of Amica Mutual Insurance Co. v. Amato, 667 So.2d 802 (Fla. 4th DCA 1995), and its recent decision in Comesanas v. Auto-Owners Ins. Co., 700 So.2d 118, 119 (Fla. 2d DCA 1997). See Young, 712 So.2d at 461. The Second District then certified to this Court the question of the validity of the policy provision excluding self-insurers from the definition of "uninsured motorist" as one of great public importance. See id.

ANALYSIS
At this time, Progressive does not contest the Youngs' allegations that their damages exceed the limit of liability established in the certificate of self-insurance provided by the Sheriff's Office. However, because the tortfeasor chose to self-insure its vehicle rather than purchase a commercial liability policy to cover its tort liabilities, Progressive asserts that the Youngs are not entitled to either uninsured motorist coverage or underinsured motorist coverage under their insurance policy.
The core issue in this case is whether the uninsured motorist statute permits an uninsured motorist carrier to exclude coverage when its insured is injured through the negligence of a self-insured motorist and the damages exceed the limits established in the tortfeasor's certificate of self-insurance. The uninsured motorist statute provides that:
No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state ... unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....
§ 627.727(1), Fla. Stat. (1995).[1] As we explained in Allstate Insurance Co. v. Boynton, 486 So.2d 552, 557 (Fla.1986):
The legislature wisely enacted a scheme whereby a motorist may obtain a limited form of insurance coverage for the uninsured motorist, by requiring that every insurer doing business in this state offer and make available to its *83 automobile liability policyholders UM coverage in an amount equal to the policyholder's automobile liability insurance. The policyholder pays an additional premium for such coverage.
The reason insurers are statutorily required to offer uninsured motorist coverage to the insured is
to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party. The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.

Brown v. Progressive Mut. Ins. Co., 249 So.2d 429, 430 (Fla.1971) (emphasis supplied).
Because the uninsured motorist statute "was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist; it is not to be `whittled away' by exclusions and exceptions." Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 238 (Fla.1971). For these reasons, provisions in uninsured motorist policies that provide less coverage than required by the statute are void as contrary to public policy. See, e.g., Salas v. Liberty Mut. Fire Ins. Co., 272 So.2d 1, 5 (Fla.1972); Mullis, 252 So.2d at 233-34. Thus, we must determine whether a policy provision that excludes coverage when an insured is injured by a self-insured motorist is contrary to the uninsured motorist statute and void as against the public policy of the statute.
The uninsured motorist statute never specifically provides a definition of an "uninsured" motor vehicle. However, the uninsured motorist statute sets forth in section 627.727(3) the circumstances under which a vehicle will be considered "uninsured" even when the vehicle is actually insured. For example, an "uninsured motor vehicle" shall
be deemed to include an insured motor vehicle when the liability insurer thereof:
. . . .
(b) Has provided limits of bodily injury liability for its insured which are less than the total damages sustained by the person legally entitled to recover damages....
§ 627.727(3) (emphasis supplied). This is commonly referred to as an "underinsured" motor vehicle. See also § 627.727(6)(a)-(c) (specifically referring to an "underinsured motorist insurer").
We first address whether a self-insured motorist with a certificate of self-insurance with limits of liability lower than the damages sustained by the injured person should be considered an underinsured motorist as defined in the uninsured motorist statute. Pursuant to the statutory provisions, a motorist is underinsured when the "liability insurer" provides limits of bodily injury liability less than the total damages sustained. § 627.727(3)(b). In addition, sections 627.727(6)(a) and (b) also refer only to motorists with liability insurers as "underinsured" motorists.[2]
*84 Thus, under sections 627.727(3) and (6), in order to be considered underinsured, the tortfeasor must have a liability insurer. The term "liability insurer" is undefined in the part of the Insurance Code related to uninsured motorists coverage. See generally § 627.727. However, an "insurer" is broadly defined in section 624.03, Florida Statutes (1995), as "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity."
In Diversified Services, Inc. v. Avila, 606 So.2d 364 (Fla.1992), a company that leased automobiles provided its lessees compliance with the Financial Responsibility Law through a program of self-insurance.[3] This Court was asked to consider whether the self-insured company was an "insurer" that was required by section 627.727 to offer uninsured motorist coverage to its lessees. We determined in Avila that because the self-insurer was not an authorized insurance company, it had no obligation to provide uninsured motorist coverage. 606 So.2d at 366. We concluded in Avila that
providing compliance [with financial responsibility laws] through self-insurance is not the same as issuing a "motor vehicle liability policy"; therefore, section 627.727 is not applicable. Nor does Budget's status as a self-insurer make it an "insurer" under the Florida Insurance Code.

Id. (emphasis supplied); see also Lipof v. Florida Power & Light Co., 596 So.2d 1005, 1007-08 (Fla.1992) (determining that an entity complying with the financial responsibility law by posting a surety bond rather than buying commercial insurance should not be considered an "insurer" required to offer uninsured motorist coverage). Accordingly, we agree with Progressive that because a self-insurer is not a liability insurer under the Florida Insurance Code, a self-insured motorist cannot be considered an underinsured motorist based on the statutory language of section 627.727(3) that limits the definition of underinsured motorists to those having liability insurers.
Having determined that a motorist possessing a certificate of self-insurance with limits of liability lower than the damages sustained is not "underinsured" because a person or entity who is a "self-insurer" is not a "liability insurer," we must next determine whether a self-insured motorist should be deemed an "uninsured" motorist. As we have previously explained, a basic rule of statutory construction is that:
It is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with one another.
Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) (citations omitted). Because the Legislature defined an underinsured motorist in section 627.727(3) and left the term "uninsured" otherwise undefined in section 627.727(1), we must read these provisions together in order to arrive at a consistent *85 and harmonious interpretation of the uninsured motorist statute. Section 672.727(3) sets forth the circumstances where an insured motor vehicle will be considered "uninsured," such as when the vehicle is underinsured because the "liability insurer" provided limits of liability lower than the damages sustained. See § 627.727(3)(b). Reading section 627.727(3) in pari materia with section 627.727(1) leads to a logical and harmonious statutory interpretation of the term "uninsured" as a motorist without a "liability insurer," who is not considered statutorily "underinsured" pursuant to 627.727(3). Thus, a motorist who is self-insured must be deemed statutorily uninsured.
This statutory construction, which would prohibit a self-insurer exclusion as contrary to the uninsured motorist statute, is also consistent with section 627.727(9). That section provides a list of statutorily permissible policy exclusions to uninsured motorist coverage. Significantly, an exclusion for self-insured motorists is not among this list. See § 627.727(9). "Under the principle of statutory construction, expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another." Moonlit Waters Apartments Inc. v. Cauley, 666 So.2d 898, 900 (Fla. 1996). By failing to permit self-insured motorist policy exclusions in the list of authorized exclusions, the Legislature has further indicated its intent in section 627.727 not to permit self-insured motorist policy exclusions.
Finally, this statutory interpretation is a reasonable one considering the purpose of the uninsured motorist statute, which is to protect injured persons from deficiencies in the tortfeasor's insurance. See, e.g., Michigan Millers Mut. Ins. Co. v. Bourke, 607 So.2d 418, 420 (Fla.1992). If the Legislature had considered self-insurance an acceptable substitute for commercial liability insurance in the uninsured/underinsured motorist context, the Legislature would have included self-insurance within the definition of an underinsured motorist in section 672.727(3) in those cases where the damages sustained by the injured party exceed the limit of liability set forth in the certificate of self-insurance. Thus, the Legislature implicitly recognized that, while self-insurance is an acceptable substitute to commercial insurance for certain purposes, it does not provide an equivalent guarantee of payment to the injured person in the uninsured motorist context.
In Florida, a person can obtain a certificate of self-insurance to demonstrate compliance with the financial responsibility law after demonstrating "a net unencumbered worth of at least $40,000." § 324.171(a). The small amount of assets required to establish self-insurance militates against finding that a tortfeasor's self-insurance provides the injured party the same guarantee of payment as the tortfeasor's insurance policy.
As the Supreme Court of Washington concluded in invalidating a similar self-insurer exclusion: "The generalized requirements to obtain a certificate [of self-insurance] are quite different from the protection of [uninsured motorist] coverage by a regulated insurance company with the underlying protections of the Washington Insurance Guaranty Association Act." Kyrkos v. State Farm Mut. Auto. Ins. Co., 121 Wash.2d 669, 852 P.2d 1078, 1083 (1993). We agree that there are important differences between insurance and self-insurance. Whereas traditional insurance involves risk shifting, self insurance involves risk retention:

[S]elf-insurance does not constitute insurance in any traditional form. In self-insurance the company, governmental entity or individual chooses not to purchase insurance but rather retains the risk of loss. In order to protect against losses, the self-insured will often set aside funds on a regular basis to provide its own pool from which losses will be paid. This can be analogized to the situation where a party purchasing traditional insurance pays premiums to the insurer on a regular basis. However, *86 in a self-insurance situation there is no shifting of the risk from the individual person or company to a larger group. Thus, even though self-insurance for certain types of risks may be regulated by the state insurance department, it does not constitute insurance in any real sense.

1 Eric Mills Holmes and Mark S. Rhodes, Appleman on Insurance, § 1.3, at 10 (2d ed.1996) (emphasis supplied). Thus, based on the language of the uninsured motorist statute and in the absence of an expression of legislative intent to the contrary, we conclude that Florida's uninsured motorist statute treats a motorist who is self-insured as an uninsured motorist and therefore a self-insured motorist exclusion is invalid.
Prior appellate cases in this state that have upheld self-insurer exclusions have not done so as a matter of statutory construction. See, e.g., Gabriel v. Travelers Indem. Co., 515 So.2d 1322, 1324 (Fla. 3d DCA 1987); Centennial Ins. Co. v. Wallace, 330 So.2d 815, 817 (Fla. 3d DCA 1976).[4] In Amica Mutual, the Fourth District concluded that a self-insurer exclusion does not invalidly "reduce statutorily prescribed UM coverage." 667 So.2d at 803. The Fourth District in Amica Mutual reasoned that a self-insured motorist should not be considered either an underinsured or uninsured motorist as contemplated by the statute because:
Uninsured is when the tort-feasor's liability insurer has provided limits of bodily injury liability for its insured which are less than the total damages sustained. A self-insured entity is statutorily permitted to retain the risk of liabilitya risk that is theoretically infinite.
Id.
However, we find that Amica Mutual is predicated on faulty distinctions. First, all tortfeasors, other than governmental entities, retain a "theoretically infinite" risk of liability whether the tortfeasor is insured, uninsured, or self-insured. When a tortfeasor is uninsured or a commercially insured tortfeasor is underinsured, uninsured motorist benefits are available to the policyholder regardless of the wealth or poverty of the tortfeasor. As the Supreme Court of Maine explained in striking down a policy provision excluding vehicles owned by a government entity:
[T]he Legislature mandated coverage for all uninsured motorists, without differentiating between the financially responsible and the financially irresponsible.... [C]overage is mandated for all uninsured motor vehicles without regard to the fact that certain uninsured drivers may be financially responsible.
Young v. Greater Portland Transit Dist., 535 A.2d 417, 420 (Me.1987); accord United Servs. Auto. Ass'n v. Phillips, 740 So.2d 1205, 1207 (Fla. 2d DCA 1999) (finding an exclusion in an uninsured motorist policy for vehicles owned by government entities to be void as against public policy); Johns v. Liberty Mut. Fire Ins. Co., 337 So.2d 830, 831 (Fla. 2d DCA 1976) (same). Likewise, our statute does not predicate the ability of the injured persons to claim uninsured or underinsured motorist coverage from their own carrier on a showing that the tortfeasor lacks the financial resources to respond to the claim.
Instead, the critical question in determining whether a motorist is uninsured or underinsured is whether the tortfeasor possesses insurance that will make the injured party whole. See Brown, 249 So.2d at 430. If a self-insured tortfeasor is considered neither uninsured nor underinsured, the policy of the uninsured motorist statute of protecting injured persons from deficiencies in the tortfeasor's insurance *87 coverage is frustrated. As observed by Professor Widiss:
At best, [a self-insured motorist exclusion] transfers to the insured the burden of ascertaining whether the resources are available from a self-insurer, and places on the insured the burden (including the costs) of securing recovery. At worst, this limitation precludes indemnification from the insurance company despite the fact that the self-insurer in question is unable to respond to the claim.
1 Alan A. Widiss, Uninsured and Underinsured Motorist Insurance, § 8.7 at 456 (Rev.2d ed.1999).
The fallacy of Amica Mutual's distinction is even more pronounced when the tortfeasor is a governmental entity that has elected to be self-insured as permitted by section 768.28(15)(a), Florida Statutes (1995). Pursuant to that section, governmental entities have the discretion to meet these tort liabilities by deciding to "be self-insured, to enter risk management programs, or to purchase liability insurance." Id. However, the statutory waiver of sovereign immunity provides that subdivisions of the state are liable in tort to the same extent as private entities, but that the damages recoverable are limited to $100,000 per person and $200,000 per occurrence. See § 768.28(5). If injured parties are awarded damages in an amount above the statutory cap on damages, the excess amount "may be paid in part or in whole only by further act of the Legislature." Id. (emphasis supplied).
In Michigan Millers Mut. Ins. Co. v. Bourke, 607 So.2d 418 (Fla.1992), we held that an uninsured motorist carrier was not permitted to avoid liability under its policy by invoking the tortfeasor's sovereign immunity defense to claims in excess of $100,000 per person. Were we to allow the self-insurance exclusion to stand, the uninsured motorist carrier would in effect be permitted to raise the sovereign immunity defense to claims in excess of $100,000 per person as to those governmental entities who elected to self-insure, but not as to governmental entities who purchased commercial liability policies. In effect, this would undermine the intent of our decision in Michigan Millers.
If the self-insurance exclusion is upheld in this case, the Youngs' only option would be to obtain a judgment in excess of $100,000 against the Sheriff's Office and then attempt to obtain payment through the discretionary legislative claims bill process. However, if the Sheriff's Office had obtained a commercial liability policy for $100,000, the Youngs would have been able to make a claim under their uninsured motorist policy. Thus, the ability of the Youngs to recover under their own policy of uninsured motorist coverage would depend solely on the tortfeasor's decision to self-insure rather than purchase a commercial liability policy. We conclude this result is wrong as a matter of law, logic, and the public policy of this state mandating that liability insurers offer uninsured motorist coverage for the protection of injured persons. See Brown, 249 So.2d at 430.
Pursuant to Florida's uninsured motorist statutory scheme, motorists are considered uninsured when they lack liability insurance or possess liability insurance with limits of liability lower than the damages sustained by the policy-holder. We thus conclude that a self-insured motorist exclusion is contrary to the statutory scheme set forth in the uninsured motorist statute, and that the provision in the Progressive uninsured motorist policy refusing to treat a self-insured motorist as either an underinsured or uninsured motorist is void.[5]
*88 We answer the certified question in the negative, quash Young and disapprove of the Fourth District's opinion in Amica Mutual and the Second District's recent decision in Comesanas. We also disapprove of Centennial, Gabriel and Johns to the extent they are inconsistent with this opinion.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD, LEWIS and QUINCE, JJ., concur.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
I dissent. I conclude that this issue should be decided by the simple and straightforward recognition that a motor vehicle that is covered by a certificate of self-insurance in accord with section 324.031(4), Florida Statutes (1999),[6] and is thereby a self-insured motor vehicle, is, for the purposes of the Financial Responsibility Law, precisely what it is stated to bean insured motor vehicle, not an uninsured motor vehicle. Pursuant to section 627.727, Florida Statutes (1999), a self-insured motor vehicle that meets the requirements of section 324.031(4), is just as much an "insured" motor vehicle as one covered by a motor vehicle liability policy pursuant to section 324.031(1). This straightforward recognition answers the certified question "yes" because it is simply a recognition of the plain meaning of the statute. See Amica Mutual Ins. Co. v. Amato, 667 So.2d 802 (Fla. 4th DCA 1995). It is whether a vehicle meets the requirements of the Financial Responsibility Law which is determinative of whether the vehicle is "uninsured."
This conclusion is also consistent with the policy basis for the landmark case of Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla.1971). In Mullis this Court said:
In sum, our holding is that uninsured motorist coverage prescribed by Section 627.0851 [now 324.031] is statutorily intended to provide the reciprocal or mutual equivalent of automobile liability coverage prescribed by the Financial Responsibility Law, i.e., to say coverage where an uninsured motorist negligently inflicts bodily injury or death upon a named insured, or any of his family relatives resident in his household, or any lawful occupants of the insured automobile covered in his automobile liability policy. To achieve this purpose, no policy exclusions contrary to the statute of any of the class of family insureds are permissible since uninsured motorist coverage is intended by the statute to be uniform and standard motor vehicle accident liability insurance for the protection of such insureds thereunder as "if the uninsured motorist had carried the minimum limits" of an automobile liability policy.

Id. at 237-38 (emphasis added).
A fair and complete reading of Mullis illustrates that a policy exclusion in a motor vehicle liability policy issued to cover a motor vehicle registered or principally garaged in Florida is void if it excludes uninsured motorist coverage for an insured involved in an automobile accident with a motor vehicle that does not have liability insurance meeting the minimum requirements of the financial responsibility law. It is axiomatic that a qualified self-insurance plan meets the minimum requirements of the financial responsibility law. This is precisely what section 324.031, Florida Statutes (1999), states:
Manner of proving financial responsibility. -The owner or operator of a taxicab, limousine, jitney, or any other for-hire passenger transportation vehicle may prove financial responsibility by providing satisfactory evidence of holding a motor vehicle liability policy as defined in s. 324.021(8) or s. 324.151, which policy is issued by an insurance *89 carrier which is a member of the Florida Insurance Guaranty Association. The operator or owner of any other vehicle may prove his or her financial responsibility by:
(1) Furnishing satisfactory evidence of holding a motor vehicle liability policy as defined in ss. 324.021(8) and 324.151; [or]
. . . .
(4) Furnishing a certificate of self-insurance issued by the department in accordance with s. 324.171.
Therefore, the policy reasoning of Mullis is met by self-insurance meeting the requirements section 324.031(4), which complies with the statute just as much as a commercial policy meeting the requirements of section 324.031(1).
This analysis is supported by the Third District's decision in Gabriel v. Travelers Indemnity Co., 515 So.2d 1322 (Fla. 3d DCA 1987). In that case, Gabriel sustained injuries in an automobile accident involving a vehicle owned by the City of Miami. The City maintained a self-insurance program but did not have a certificate of self-insurance as set forth in the statute. Gabriel claimed the City was uninsured. The district court stated:
Section 768.28(13), Florida Statutes (1979), authorizes municipalities to obtain any of four types of tort liability coverage: (a) self-insurance, (b) risk management program, (c) liability insurance, or (d) any combination of the stated methods. The City chose to be self-insured and maintains coverage through its Risk Management Department. Thus, under section 768.28(13), the City qualifies as a self-insurer against tort liability.
Gabriel argues that the City's failure to obtain the certificate described in sections 324.031 and 324.171, Florida Statutes (1979), left it uninsured and entitles him to recover uninsured motorist benefits. We disagree. Our primary reason for recognizing the City's status as self-insured is the public purpose behind the uninsured motorist statute. The supreme court has consistently held that "[t]he purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party." Brown v. Progressive Mut. Ins. Co., 249 So.2d 429, 430 (Fla.1971); see also Salas v. Liberty Mut. Fire Ins. Co., 272 So.2d 1 (Fla.1972); Mullis v. State Farm Mut. Automobile Ins. Co., 252 So.2d 229 (Fla. 1971). The test for determining an injured party's entitlement to uninsured motorist's benefits is "whether the offending motorist has insurance available for the protection of the injured party...." Brown, 249 So.2d at 430. Here, the City has insurance through its trust fund and possesses the ability to make Gabriel whole.
. . . .
... The record affords ample proof that the City is self-insured pursuant to section 768.28(13), and consequently, Gabriel is not entitled to obtain uninsured motorist benefits.
Id. at 1323-24 (footnotes omitted).
The same analysis was followed by the Fourth District in Arnica Mutual, in which the district court logically concluded:
By statute, the city is entitled to be self-insured. "Self-insured" is different from "uninsured." Uninsured is when the tort-feasor's liability insurer has provided limits of bodily injury liability for its insured which are less than the total damages sustained.
667 So.2d at 803.
Moreover, I do not follow the complex knitting together of sections 627.727(1) and 627.727(3), Florida Statutes, which undergirds the majority's opinion to reach the rather startling conclusion that "a motorist who is self-insured must be deemed statutorily uninsured." Majority op. at 85. I do not believe such complexly constructed reasoning can convert self-insured into uninsured.
*90 The majority incorrectly asserts that allowing the self-insurer policy exclusion to stand would undermine the intent of our decision in Michigan Millers Mutual Insurance Co. v. Bourke, 607 So.2d 418 (Fla. 1992). Majority op. at 87. In Bourke, the school board had in effect a liability insurance policy, and its policy limits of $325,000 were exhausted. The issue did not involve a self-insured governmental agency. Rather, the issue was the statutory construction of the words "legally entitled to recover" in section 627.727(1) as related to the limits for judicial recovery against a state agency under section 768.28. This Court only reached the logical conclusion that because the Legislature can pay claims in excess of the limits of section 768.28, sovereign immunity under section 768.28 is not absolute. Id. at 421. The majority's analysis of the effect of holding a self-insured not to be uninsured does not logically follow.
Furthermore, this Court held in Allstate Insurance Co. v. Boynton, 486 So.2d 552 (Fla.1986), that as a prerequisite to recovering from an uninsured motorist carrier, the policyholder must prove that the tortfeasor is uninsured. Id. at 557. This Court then indicated that this could be done by showing that the tortfeasor "is without insurance or has not complied with the self-insurance provisions of the statutes." Id. at 558. (emphasis added). It is apparent to me that the Court did not belabor the point of a self-insured not being uninsured because it saw no need to belabor the obvious.
Finally, this Court's decisions in Lipof v. Florida Power & Light Co., 596 So.2d 1005 (Fla.1992), and Diversified Services v. Avila, 606 So.2d 364 (Fla.1992), do not support the incongruous result that, while a self-insured motor vehicle qualified under section 324.031(4), Florida Statutes, is not an underinsured motor vehicle, the vehicle is an uninsured motor vehicle. I read Lipof and Avila to be statutory constructions of section 627.727 which limit the application of that statute to "policies of liability insurance." These cases give to the statute its plain meaning, as does the analysis of the majority in this case as to underinsured motorist coverage. This is merely giving effect to the requirement of section 627.727 as those requirements pertain to "policies of insurance." However, those cases in no way make the illogical leap that only motor vehicles covered by "policies of liability insurance" are insured vehicles. Simply because a motor vehicle is not covered by a "policy of liability insurance" does not render the word "insured" a nullity in "self-insured." It merely means that the vehicle is "insured" other than by a policy regulated by the insurance code applicable to commercial insurance policies.
As noted in footnote 2 of the majority decision, an integral part of section 627.727 is the procedure set forth in subdivision (6) for an underinsured motorist insurer to retain subrogation rights against the tortfeasor. This is because, as we have noted with approval, it is this subrogation right which distinguishes uninsured motorist insurance from liability insurance. Travelers Ins. Co. v. Warren, 678 So.2d 324, 328 (Fla.1996) (citing with approval Bulone v. United Services Auto. Assn., 660 So.2d 399, 400 (Fla. 2d DCA 1995)). Under the majority's decision in this case, the right of subrogation is left in limbo. How in practical application is this to work? Can the Progressive insured collect from both its own insurance and from the self-insured, or does it have to preserve the subrogation right against the self-insured? If the subrogation right does have to be preserved, what is the procedure? Since the statutory procedure does not apply, it is even more apparent that a vehicle covered by qualified self-insurance simply is not intended to be an uninsured motor vehicle within the contemplation of this statute.
Accordingly, I dissent from the majority's opinion and would approve the district court's decision below.
NOTES
[1] We note that although the 1995 version of the Florida Statutes are applicable in this case, none of the pertinent sections of the statutes at issue have changed in the 1999 version of the Florida Statutes.
[2] Section 627.727(6)(a), Florida Statutes (1995), sets forth the procedures that must be followed when an injured person agrees to settle the claim with the underinsured motorist's liability insurer for an amount that does not "fully satisfy the claim," thereby "creating" an "underinsured motorist claim." If these procedures are followed, the injured party is authorized to execute a release in favor of the "underinsured motorist's liability insurer" and still pursue any "underinsured motorist claim." Id. In addition, section 627.727(6)(b) discusses procedures for the "underinsured motorist insurer" to follow if it chooses to refuse permission to settle in order to preserve its subrogation rights against "the underinsured motorist and the liability insurer." We have previously recognized that this section sets forth "a procedure to be followed when a claimant settles with the tortfeasor's liability carrier." Woodall v. Travelers Indent. Co., 699 So.2d 1361, 1363 (Fla.1997). The fact that this procedure only anticipates offers of settlement from a "liability insurer" rather than a self-insured tortfeasor strongly suggests that the Legislature did not contemplate that a self-insured motorist could be considered "underinsured."
[3] The financial responsibility laws applicable to all motorists provide that after having an accident or committing certain traffic offenses, persons must provide "proof of financial ability to respond for damages in future accidents" before they will be permitted to drive in Florida. § 324.011, Fla. Stat. (1995). Motorists can prove compliance with the financial responsibility law by purchasing a commercial insurance policy or by obtaining a certificate of self-insurance issued by the Department of Insurance, as well as through other statutorily approved methods. See § 324.031, Fla. Stat. (1995). Similarly, motorists can meet the insurance requirements of the Florida Motor Vehicle No Fault Law by self-insuring as authorized by section 324.031(4) or, with regard to governmental entities, as authorized by section 768.28(15)(a), Florida Statutes (1995). See § 627.733(3)(b), Fla. Stat. (1995). Owners of private passenger vehicles may obtain a certificate of self-insurance from the Department of Insurance if they show a net, unencumbered worth of at least $40,000. See § 324.171, Fla. Stat. (1995).
[4] We note that in several cases the district courts concluded that a tortfeasor did not qualify as self-insured, so that the validity of the self-insurer exclusion was not directly before the courts. See United Servs. Auto. Ass'n v. Phillips, 740 So.2d 1205 (Fla. 2d DCA 1999); Zeichner v. City of Lauderhill, 732 So.2d 1109, 1113 (Fla. 4th DCA 1999); Johns v. Liberty Mut. Fire Ins. Co., 337 So.2d 830 (Fla. 2d DCA 1976).
[5] We disagree with the dissent's assessment that our decision today calls into question the uninsured motorist carrier's right to subrogation. The uninsured motorist carrier retains a right to subrogation against the self-insured tortfeasor, just as it would entertain a right of subrogation against an uninsured tortfeasor.
[6] See ch. 324, Fla. Stat. (1999) (Financial Responsibility Law).