KELLY, Judge.
State Farm Mutual Automobile Insurance Company appeals from a $100,000 judgment entered in favor of its insured, appellee Scott Siergiej, in an action seeking uninsured motorist coverage. The judgment equals the coverage limit on the uninsured motorist policy State Farm issued to Mr. Siergiej. The jury’s verdict totaled $211,000. Before trial, State Farm waived its right to subrogation and consented to a settlement between Mr. Sier-giej and the tortfeasor, a self-insured governmental agency, for $50,000 when $100,000 in coverage was available. If the self-insured governmental agency is treated the same way as a standard liability insurer, as State Farm argues it should be, State Farm is entitled to a credit of $100,000 against the verdict, which together with the other credits State Farm claims, will reduce the judgment to an amount less than $100,000. See § 627.727(6)(c), Fla. Stat. (2003). We conclude, however, that State Farm is only entitled to a credit for the actual settlement amount, $50,000. Accordingly, we affirm.
After being involved, in a crash with a motorcycle operated by an employee of the Lee County Sheriffs Department, Mr. Siergiej sued the Lee County Sheriffs Department (the Sheriff) and State Farm, his uninsured motorist insurer, asserting two negligence claims against the Sheriff arising from the crash and seeking uninsured motorist benefits from State Farm. Mr. Siergiej eventually reached an agreement with the Sheriff to settle his claim for $50,000, which was less than the $100,000 in self-insured liability funds available from the Sheriff. Following the dictates of section 627.727(6), Mr. Siergiej obtained State Farm’s permission to settle his claim against the Sheriff for less than the full amount of available self-insurance.
The litigation between Mr. Siergiej and State Farm continued, the primary dispute being the cause of the injuries to Mr. Siergiej’s ankle and to a lesser extent the cause of the injuries to his back — liability was not at issue. At the conclusion of the three-day trial, the jury found that the accident had caused the injuries to both Mr. Siergiej’s neck and his ankle and it returned a verdict awarding him $211,000. Subsequently, State Farm asked the court to determine what amounts should be credited against the verdict. Specifically, State Farm wanted credit for the $100,000 in self-insured liability funds available from the Sheriff, less $13,101 the Sheriff had paid for property damage, for a total of $86,899; $26,780 in medical expenses awarded for the neck injury Mr. Siergiej’s workers’ compensation carrier had paid; $20,000 awarded for past lost wages, which was less than the $44,930 in lost wages and disability benefits the workers’ compensation carrier had paid; and $5000 in PIP benefits State Farm had paid under Mr. Siergiej’s policy. Ultimately, the court, without explanation, denied State Farm’s motion and entered a judgment in Mr. Siergiej’s favor in the amount of $100,000, State Farm’s policy limits.
On appeal State Farm argues that the trial court did not apply the proper credits and that had it done so the judgment would have been for $72,321.60. Of the possible credits to which State Farm claimed entitlement, the primary one at issue in this appeal is the credit for the *525 $100,000 in coverage available to Mr. Sier-giej pursuant to the Sheriffs program of self-insurance. State Farm argues it is entitled to a credit for the full $100,000, minus the amount previously paid to Mr. Siergiej for his property damage claim.
In support of this argument, State Farm points to section 627.727(6)(e), which provides that an underinsured motorist insurer is entitled to a credit against its insured’s total damages in the amount of the underinsured motorist’s liability policy in cases where it has given its insured permission to settle with the underinsured motorist in an amount that does not fully satisfy its insured’s claim. Alternatively, State Farm points to section 627.727(1), which limits uninsured motorist coverage to amounts “over and above ... the benefits available” to the insured from the owner or operator of the uninsured motor vehicle. State Farm also relies on section 627.727(1) in support of its contention that it was entitled to credit for the amounts Mr. Siergiej received in workers’ compensation and PIP benefits.
Mr. Siergiej counters that section 627.727(6)(c) is inapplicable in this case because it governs settlements with liability insurers, not self-insured entities such as the Sheriff and that, therefore, State Farm is not entitled to credit under that section. Mr. Siergiej at least tacitly concedes, however, that under section 627.727(1), State Farm is entitled to a credit for the $50,000 he received from the Sheriff. Finally, Mr. Siergiej contends that while section 627.727(1) does provide for credits for PIP and workers’ compensation benefits, it does so only where the damages awarded by the jury duplicate those benefits. He contends State Farm did not prove that the amounts awarded by the jury duplicated the PIP and workers’ compensation benefits he had received.
Section 627.727 regulates under-insured and uninsured motorist coverage. Subsection 627.727(6) outlines the procedure an injured insured must follow if he elects to settle with a liability insurer and its insured in an amount that does not fully satisfy his claim for personal injuries so as to create an underinsured motorist claim.[1] *526 Subsection (c) states that “[t]he underin-sured motorist insurer is entitled to a credit against the total damages in the amount of the limits of the underinsured motorist’s liability policy in all cases to which this subsection applies.” § 627.727(6)(c). The underinsured motorist insurer is entitled to this credit even when the insured’s settlement with the liability insurer is for less than the full amount of the underinsured motorist’s liability policy. Id. State Farm argues that under subsection (6) it is entitled to a credit for the full $100,000 in self-insurance that was available from the Sheriff.
Mr. Siergiej points to Young v. Progressive Southeastern Insurance Co., 753 So.2d 80 (Fla.2000), and argues that because Young held that a self-insured motorist with a certificate of self-insurance with limits of liability lower than the damages sustained by the injured person is not an underinsured motorist as defined in section 627.727, subsection (6) is inapplicable; thus, State Farm is not entitled to a credit for the Sheriffs $100,000 in self-insurance. According to Young, as a self-insured, the Sheriff is considered to be “statutorily uninsured,” not underinsured:
[Bjecause a self-insurer is not a liability insurer under the Florida Insurance Code, a self-insured motorist cannot be considered an underinsured motorist based on the statutory language of section 627.727(3) that limits the definition of underinsured motorists to those having liability insurers.
[[Image here]]
... Because the Legislature defined an underinsured motorist in section 627.727(3) and left the term “uninsured” otherwise undefined in section 627.727(1), we must read these provisions together in order to arrive at a consistent and harmonious interpretation of the uninsured motorist statute. Section 672.727(3)[sic] sets forth the circumstances where an insured motor vehicle will be considered “uninsured,” such as when the vehicle is underinsured because the “liability insurer” provided limits of liability lower than the damages sustained. See § 627.727(3)(b). Reading section 627.727(3) in pari materia with section 627.727(1) leads to a logical and harmonious statutory interpretation of the term “uninsured” as a motorist without a “liability insurer,” who is not considered statutorily “underinsured” pursuant to 627.727(3). Thus, a motorist who is self-insured must be deemed statutorily uninsured.
Id. at 84-85.
State Farm counters Mr. Siergiej’s argument in the only way it can — it has urged us to find that Young does not control in this case because the issue in Young was the validity of a policy exclusion that excluded self-insured vehicles from the definition of uninsured or under-insured motor vehicles. Notwithstanding the fact that the issue in Young was different, we believe Young compels the conclusion that subsection (6), which pertains to underinsured motorist claims where the injured party has agreed to settle with a liability insurer, is inapplicable in this case because according to Young, the Sheriff as a self-insured is neither an underinsured *527 motorist nor does its certifícate of self-insurance constitute a liability policy. See id. at 84-87. Young is unequivocal on this point. Not only does Young lack any qualifying language, in footnote 2 the court specifically discusses the procedure outlined in subsection (6) and states that the fact “this procedure only anticipates offers of settlement from a ‘liability insurer’ rather than a self-insured tortfeasor strongly suggests that the Legislature did not contemplate that a self-insured motorist could be considered ‘underinsured.’ ” Id. at 83 n. 2.
As additional support for its argument that subsection (6) should be read to include self-insured motorists, State Farm points to the fact that Mr. Siergiej invoked the settlement procedure set forth in that subsection, treating the Sheriff as though it was a liability insurer and seeking State Farm’s approval before accepting a settlement. In turn, State Farm consented to the settlement, thereby waiving its subro-gation rights. That the parties treated the statute as though it applied is not a basis for us to ignore Young. While it may seem unfair that Mr. Siergiej, having benefited from relying on subsection (6),[2] should now be able to argue its inapplicability, thereby depriving State Farm of the protection afforded to an underinsured motorist carrier that relinquishes its right to subrogation by authorizing a settlement with the tortfeasor and his liability insurer, State Farm could have, but did not, raise an estoppel argument that may have precluded this result. We also note that State Farm’s policy contains a provision that tracks subsection (6). That policy provision imposes the same obligations on State Farm and its insured that subsection (6) imposes, and it confers the same benefits and protections. The policy, however, provides that it is applicable not only to vehicles lacking liability insurance but also to those without self-insurance or those with liability or self-insurance limits that are less than the insured’s total damages. State Farm never invoked its right under the policy to receive credit for the full amount of the limits of the Sheriffs self-insurance.
In the alternative, State Farm argues that under subsection (1) it should receive a credit for the full amount of the Sheriffs self-insurance. It also relies on subsection (1) as the basis for its claim that it is entitled to a credit for the PIP and workers’ compensation benefits Mr. Siergiej received. Subsection (1) states that the coverage provided for in section 627.727 is to cover the difference, if any, between the benefits available to the insured from other sources and the damages the insured has sustained, up to the limits of the policy:
The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured under any workers’ eompen- *528 sation law, personal injury protection benefits, disability benefits law, or similar law; under any automobile medical expense coverage; under any motor vehicle liability insurance coverage; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident; and such coverage shall cover the difference, if any, between the sum of such benefits and the damages sustained, up to the maximum amount of such coverage provided under this section.
Thus, the statute gives State Farm a credit against Mr. Siergiej’s damages to the extent the jury’s award duplicates the benefits available to Mr. Siergiej from workers’ compensation, PIP, or the Sheriff. See State Farm Mut. Auto. Ins. Co. v. Vecchio, 744 So.2d 570, 571 (Fla. 2d DCA 1999).[3]
With respect to the benefits he received through PIP or workers’ compensation, Mr. Siergiej contends that State Farm was not entitled to a credit because it did not establish that the damages awarded by the jury for lost wages and past and future medical expenses duplicated those benefits. We find no merit to that contention. Accordingly, we conclude that State Farm was entitled to credits for those amounts.
Whether State Farm is entitled to a credit for the full amount of the Sheriffs self-insurance presents a more interesting question. State Farm is clearly entitled to credit for the $50,000 Mr. Siergiej received from the Sheriff. In the trial court, Mr. Siergiej acknowledged that State Farm was entitled to this credit, and on appeal, while not expressly conceding the point, he has not argued otherwise. Whether State Farm is entitled to credit for the remaining self-insurance coverage requires us to consider the meaning of “benefits available” as used in subsection (1).
In United Services Automobile Ass’n v. Phillips, 740 So.2d 1205, 1208-09 (Fla. 2d DCA 1999), this court discussed the meaning of the phrase “benefits available” in section 627.727(1) and stated that “benefits available” equated to a “legally enforceable right to recover which arises upon the occurrence resulting in the insured’s injury.” In Phillips, the injured party had settled with the tortfeasor, a government entity, for $100,000, which was the retained limit on its policy of liability insurance that provided for up to $2 million in coverage for amounts exceeding the retained limit of $100,000. USAA sought credit for the entire $2.1 million claiming it *529 constituted “benefits available” to its insured. This court disagreed that the $2 million in excess liability was “available” stating that under the excess policy “no enforceable right to benefits arises upon an occurrence” because the policy benefits were payable only if the legislature passes a claims bill enacting a private relief act, which is not granted as a matter of right but rather as a matter of legislative grace. Id. at 1209. In this case, Mr. Siergiej did have an enforceable right to the $100,000 in self-insured liability coverage available from the Sheriff. Our analysis, however, does not end with Phillips.
Unlike subsection (6), which entitles an insurer to credit for the full amount of the underinsured motorist’s liability policy, whether or not the full amount has been paid to its insured, subsection (1) provides that uninsured motorist coverage “shall not duplicate” benefits available to the insured from other sources. Courts have consistently construed this language to require that the benefits not only be “available” but also that the damages awarded by the jury duplicate the available benefits. See, e.g., Hartford Accident & Indem. Co. v. Lackore, 408 So.2d 1040 (Fla.1982); Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla.1978); Vecchio, 744 So.2d at 571; Aetna Cas. & Sur. Co. v. Langel, 587 So.2d 1370 (Fla. 4th DCA 1991); Allstate Ins. Co. v. Morales, 533 So.2d 952 (Fla. 5th DCA 1988); Centennial Ins. Co. v. Fulton, 532 So.2d 1329 (Fla. 3d DCA 1988); Bergmann v. Sentry Ins., 422 So.2d 972 (Fla. 4th DCA 1982).[4] Thus, while the $100,000 may have been “available” as defined in Phillips, the jury’s award of damages can only duplicate the $50,000 settlement Mr. Siergiej received from the Sheriff — it cannot duplicate a payment that was never made. Phillips never reached the issue of duplication and thus it does not control the outcome in this case.
In conclusion, we agree with State Farm that it is entitled to credit against Mr. Siergiej’s damages for the $26,780 in medical expenses and $20,000 in past lost wages paid by workers’ compensation, the $5000 in PIP benefits, and the $50,000 settlement from the Sheriff. Under section 627.727(1), Mr. Siergiej is entitled to recover the difference between the amount of those benefits and his total damages of $211,000, up to the $100,000 limits of his State Farm policy. When the total amount of benefits available to Mr. Sier-giej is subtracted from the total damages awarded by the jury, $109,000 remains, $100,000 of which he is entitled to under his uninsured motorist policy. Because the judgment entered by the trial court was for $100,000, the amount of Mr. Sier-giej’s policy limits, we affirm the final judgment.
Affirmed.
ALTENBERND and DAVIS, JJ., Concur.

. Subsection (6) provides:
(6)(a) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an under-insured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. The underinsured motorist insurer then has a period of 30 days after receipt thereof to consider authorization of the settlement or retention of subrogation rights. If an underinsured motorist insurer authorizes settlement or fails to respond as required by paragraph (b) to the settlement request within the 30-day period, the injured party may proceed to execute a full release in favor of the underinsured motorist's liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.
(b) If an underinsured motorist insurer chooses to preserve its subrogation rights by refusing permission to settle, the under-insured motorist insurer must, within 30 days after receipt of the notice of the proposed settlement, pay to the injured party the amount of the written offer from the underinsured motorist’s liability insurer. Thereafter, upon final resolution of the un-derinsured motorist claim, the underin-sured motorist insurer is entitled to seek subrogation against the underinsured motorist and the liability insurer for the amounts paid to the injured party.
(c) The underinsured motorist insurer is entitled to a credit against total damages in the amount of the limits of the underin-sured motorist’s liability policy in all cases to which this subsection applies, even if the settlement with the underinsured motorist *526 under paragraph (a) or the payment by the underinsured motorist insurer under paragraph (b) is for less than the underinsured motorist’s full liability policy limits. The term "total damages" as used in this section means the full amount of damages determined to have been sustained by the injured party, regardless of the amount of underinsured motorist coverage. Nothing in this subsection, including any payment or credit under this subsection, reduces or affects the total amount of underinsured motorist coverage available to the injured party.

. Subsection (6) provides a significant benefit to an insured who seeks to settle with the underinsured motorist. It gives the underin-sured carrier thirty days to either authorize the settlement and waive its right to subrogation or, if it wishes to retain its right to subrogation, withhold authorization and pay to its insured the amount of the settlement offer. § 627.727(6)(a),(b). As explained in Hassen v. State Farm Mutual Automobile Insurance Co., 674 So.2d 106 (Fla.1996), to address the situation in which an injured party was denied immediate access to compensation because the uninsured motorist carrier refused to approve a settlement offer and waive its subrogation rights, the statute shifts "the financial burden from the injured party to the underinsured motorist carrier by requiring the carrier to pay its insured the full amount of any settlement offer by the tortfea-sor’s liability carrier, without the need for a determination of liability, in order to preserve subrogation rights.” Id. at 110.

. Dicta in Allstate Insurance Co. v. Campbell, 842 So.2d 1031 (Fla. 2d DCA 2003), suggests that no posttrial setoff is available under subsection (1). Id. at 1033. It also suggests that the credit provided for in subsection (6) is only available where the uninsured award duplicates the liability payment from the uninsured motorist. Id. Campbell was concerned with whether the jury's award duplicated the settlement the Camp-bells had received from the tortfeasor’s insurer. Proceeds from a settlement with the tortfeasor or its insurer are one of the benefits listed in subsection (1), which gives the underinsured carrier a credit for those proceeds if they duplicate the juiy’s award. The outcome in Campbell was dictated by the duplication language of subsection (1)— it was not controlled by subsection (6), which defines the parties' rights and responsibilities when an insured wants to settle with an underinsured motorist. When Campbell states that there is no posttrial set-off under subsection (1), it is addressing the fact that there is no setoff against the amount of uninsured motorist coverage) it is not stating that there is no setoff against damages. Campbell should not be read to preclude the setoff from damages provided for in subsection (1), nor should it be read to limit the credit provided for in subsection (6) to something less than the full amount of the uninsured motorist’s liability policy.

. We recognize that the wording of subsection (1) has changed over time; however, that change did not alter the duplication language in the statute — it altered the manner in which the duplicate benefits were set off clarifying that the setoff should be from the total damages awarded to the insured rather than from the amount of the uninsured motorist coverage.