**Rose FERDINAND, Plaintiff,**

v.

**DEPARTMENT FOR CHILDREN AND THEIR FAMILIES and Robert L. Carl, Director, Defendants.**

**Civ. A. No. 90–0538P.**

United States District Court,
D. Rhode Island.

May 13, 1991.

John William Dineen, Yesser, Jessup & Green, Providence, R.I., for plaintiff.

Kevin J. Aucoin, Thomas M. Bohan, Department for Children and Their Families, Providence, R.I., for defendants.

## ORDER OF PERMANENT INJUNCTION

PETTINE, Senior District Judge.

Litigation in this case began when the plaintiff, Rose Ferdinand's, request for an adoption subsidy under Title IV–E, 42 U.S.C. § 673(c) was denied by the defendants, Department for Children and Their Families of the State of Rhode Island *et al* ("DCF"), in February of 1990. Ms. Ferdinand adopted her daughter, Nia, a black child, through Children's Friend and Service and DCF. At that time, Ms. Ferdinand was married, lived with her husband in Massachusetts and both she and her husband were employed at Dupont. As of 1990, the situation had changed. The Ferdinands were divorced. Rose Ferdinand received no child support and she was responsible for supporting not only herself and Nia but also a younger child born to the couple during the marriage. The defendants denied the "belated" request for adoption assistance contending that because the Ferdinands were offered and declined such at the time of the adoption, the present request could not even be considered. In other words, Nia Ferdinand's possible entitlement had been waived.

This matter first came before this Court on December 5, 1990 in response to the plaintiff's motion for preliminary injunction. At that time, I reviewed the case and

decided to treat the motion as a request for a temporary restraining order ("TRO"). The TRO was granted and the defendants were ordered to "qualify plaintiff for adoption assistance payments and related available benefits, including medical insurance." The parties agreed that the TRO would remain in effect until this Court rendered a further opinion following the receipt of additional briefs. The TRO did not reach the issue of the plaintiff's requested effective date of eligibility. This court ordered payments to commence on December 15, 1990.

Based on the discussion that follows, plaintiff's motion for permanent injunction is now granted.[1] I adopt the terms that were set out in the TRO: defendants shall continue to carry plaintiff as qualified plaintiff for adoption assistance payments and related available benefits, including medical insurance and shall continue to forward payments to the plaintiff.[2] Such assistance shall continue in light of any changing circumstances pursuant to the periodic readjustment provisions of 42 U.S.C. § 673(a)(3) and the provision of 42 U.S.C. § 673(a)(4).[3]

## I. *Adoption Assistance*

With the Adoption Assistance and Child Welfare Act of 1980, Congress "amended the Social Security Act to make needed improvements in the child welfare and social services programs ... to establish a program of Federal support to encourage adoptions of children with special needs ..." 1980 U.S.Code Cong. and Admin. News at 1448, 1450. The subsidized adoption program provides federal matching once a state determines that a child in foster care would be eligible for such. *Id.* at 1450–51. Eligibility turns on whether the child has special needs which tend to discourage adoption. *Id.* at 1451. "Each State would be responsible for deciding which factors would ordinarily result in making it difficult to place certain children in adoptive homes." *Id.* at 1462. "The determination could be based on such factors as a physical or emotional handicap, the need to place members of a sibling group with a single adoptive family, difficulty in placing children of certain ages or ethnic backgrounds, or similar factors or combinations of factors." *Id.* "If the State determines that adoption assistance is needed, it would be able to offer such assistance to parents who adopt the child, so long as their income does not exceed 125 percent of the median income of a family of four in the State, adjusted to reflect family size." *Id.*[4]

1. As I noted, *supra,* the parties originally submitted their briefs on a motion for preliminary injunction. In a telephone conference on May 8, 1991, however, the parties informed this Court that they waived an evidentiary hearing and oral argument and would submit the case on their briefs for permanent injunction.

2. Although the parties have not briefed the issue of retroactive relief, the Eleventh Amendment would bar payment of such from state funds even when the payments are matched by federal funds. *See Kenyon v. Sullivan,* 761 F.Supp. 951 (D.R.I.1991). The payments, therefore, will continue but there will be no retroactive payments.

3. Because I have decided this case on the basis of the statutes and regulations involved, I have not reached the constitutional issues raised by the plaintiff.

4. The Adoption Assistance Program for children with special needs is set out at 42 U.S.C. § 673(a)(1)(C) and (c).

42 U.S.C. § 673

(1) Each State with a plan approved under this part shall, directly through the State agency or through another public or nonprofit private agency, make adoption assistance payments pursuant to an adoption assistance agreement in amounts determined under paragraph (2) of this subsection to parents who, after June 17, 1980, adopt a child who—

\* \* \* \* \* \*

(C) has been determined by the State, pursuant to subsection (c) of this section, to be a child with special needs.

\* \* \* \* \* \*

(c) Children with special needs

For the purposes of this section, a child shall not be considered a child with special needs unless—

(1) the State has determined that the child cannot or should not be returned to the home of his parents; and

(2) the State had first determined (A) that there exists with respect to the child a specific factor or condition (such as his ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental, or

## II. *Regulations*

To decide this case, this Court must first determine whether Nia Ferdinand is eligible for federal adoption assistance. This determination, in turn, focuses on 45 C.F.R. § 1356.40(b)(1). That section requires that the adoption assistance agreement "[b]e signed and in effect at the time of or prior to the final decree of adoption." The defendants contend that because the Ferdinands did not enter into such an agreement, their right to adoption assistance was waived. Defendants argument, based on various policy interpretations issued by the Department of Health and Human Services including ACYF PIQ–83–5 (December 14, 1983), is that "[i]f parents are apprised of the availability of a subsidy, decline such subsidy, and do not enter into *a nominal adoption assistance agreement,* they may not later receive any assistance as the child is no longer eligible as a child with special needs under the Act." Defendants Brief at 8–9 (emphasis added).

When the defendants denied adoption assistance to the Ferdinands in 1990, they noted that the "prior agreement" requirement could be "reviewed if there were extenuating circumstances at the time of the adoption. That is, if a subsidy was not offered, or proper benefits were not explained (i.e., SSI or SSA)." Letter from John Sinapi, Jr., Administrator, DCF (February 19, 1990). However, the defendants stated that with regard to the Ferdinands, "[t]his was not the case." *Id.*

Defendants contend and plaintiffs concede that there was some minimal discussion about adoption subsidies with the Ferdinands prior to Nia's adoption and that Ms. Ferdinand told Mr. deLong, Assistant Director of Children's Friend and Service, that "she hadn't needed a subsidy at that time." Inter–Office Memo to John Sinapi from Daniel Wheelan, Assistant Administrator, DCF (February 6, 1990). The fact that the discussion was nothing more than a minimal one is supported by a letter from Mr. deLong, dated February 4, 1991, stating that "[w]e have found nothing in our records that indicates that Ms. Ferdinand or Mr. Ferdinand were ever offered a subsidy by our agency, nor any record that they either accepted or rejected an offer." Moreover, in a memorandum from Ted Keenaghan, Chief Social Services Policy and Systems Specialist, Children and Their Families, to Kevin Aucoin, Legal Counsel for the same, dated December 24, 1990, Mr. Keenaghan stated that he was "shocked to tell [Mr. Aucoin] that there is *no* mention in [the] records about a subsidy being offered to this family when the child was first adopted!!!" (emphasis in original). Even if the Ferdinands knew something about the program, the defendants' own interpretation of their mandate allows that if "proper benefits were not explained" the case may be re-opened based on the extenuating circumstances rationale.

What, therefore, would constitute a proper explanation of available benefits? This Court has no doubt that Congress intended to place the burden on the States to promote the adoption assistance program. The Code of Federal Regulations, 42 C.F.R. § 1356.40(f), states that "[t]he State agency must actively seek ways to promote the adoption assistance program." Moreover, the United States Department of Health and Human Services, in Policy Announcement ACYF–PA–83–5, discussing various

---

emotional handicaps) because of which it is reasonable to conclude that such child cannot be placed with adoptive parents without providing adoption assistance, and (B) that, except where it would be against the best interest of the child because of such factors as the existence of significant emotional ties with prospective adoptive parents while in the care of such parents as a foster child, a reasonable, but unsuccessful, effort has been made to place the child with appropriate adoptive parents without providing adoption assistance under this section.

R.I.G.L. § 15–7–25 is the enabling legislation for the federal matching program. It reads:

> The state shall make funds available through the department for children and their families for special reimbursement to adoptive parents in matters of placement of handicapped or hard to place children. These funds will be disbursed in accordance with the guidelines to be promulgated by the department for children and their families.

assistance programs available to adoptive parents stated:

> Because there are many complexities and financial implications for the States as well as the adoptive families, it is important for all parties to discuss all aspects of a combination of SSI and adoption assistance at the time the adoption assistance agreement is negotiated.
>
> *    *    *    *    *    *
>
> With full knowledge of the SSI and Adoption Assistance programs, the adoptive parents can then make an informed decision about application for or receipt of benefits from either or both programs for which they or the child are eligible. They should be advised, however, that if they decline title IV–E adoption assistance and choose to receive only SSI for the child, and if they do not execute an adoption assistance agreement before the adoption is finalized and do not receive adoption assistance payments pursuant to such an agreement, they may not later receive title IV–E adoption assistance payments, the child would no longer meet all of the eligibility requirements as a child with special needs (section 473(c)(2)).

The clear implication is that the state has an affirmative duty to fully explain all available assistance programs so that potential adoptive parents can make an informed decision. The fact that Ms. Ferdinand was never made aware of the fact that even if she did not need a subsidy at that time she might still qualify for nominal assistance that would leave the door open for later recalculation constitutes an extenuating circumstance. See, *supra,* Defendants reference to ACYF PA–83–5 (referring to nominal adoption assistance). In fact, the defendants' own procedures regarding adoption subsidies indicate that it is not the adoptive parents' needs, but rather the child's needs that determine eligibility for assistance.[5] Parents, therefore, should not be allowed to waive adoption assistance for their children without full information and knowledge of all possible benefits—present and future.

■ Reopening of the case, however, does not inevitably lead to the conclusion that the Ferdinands would have qualified for adoption assistance. The defendants argue that regardless of plaintiff's eligibility for federal adoption assistance, applicable federal law did not mandate that states provide Title IV–E adoption assistance subsidies to non-resident adoptive parents. Section 1356.40(3) of 45 C.F.R. states only that "[a] state may make an adoption assistance agreement with adopting parents who reside in another state." Because the defendants' own policies in effect at the time of Nia's adoption were mute on the issue of providing federal subsidies to non-resident parents, defendants contend that they have no obligation to the Ferdinands. Whether such obligation existed or not, however, is eclipsed by the fact that in Daniel Wheelan's memo to John Sinapi of February 6, 1990, he states that "[a]fter speaking with Camille Hardiman of Children's Friend and Service, Ted Keenaghan has determined that this child was probably IV–E eligible at the time of adoption." Mr. Keenaghan's statement is not *contrary* to the regulations which clearly allow subsidies for non-resident adoptive parents. My sense is that the residency issue is, as plaintiff contends, a mere post-hoc rationalization. I find that the Ferdinands' out of state residency did not and does not affect their eligibility for the Adoption Assistance Program.

■ Finally, the fact that Nia's special educational needs were not evident at the time of her adoption does not lead to the conclusion that she was not eligible for Title IV–E assistance as a "hard-to-place" special needs child. According to 42 U.S.C. § 673(c), *supra* note 4, race or minority status can enable a child to be classified as a "special needs" child for adoption assistance purposes. Again, Ted Keenaghan's statement comports with this under-

---

5. In R.I. Department for Children and Their Families Adoption Procedures Manual states that a "[w]orker meets with prospective adoptive parents to review the criteria for subsidy and makes them aware it is based on the needs of the child."

standing of Nia's eligibility at the time of her adoption.[6]

### III. Conclusion

In sum, plaintiffs have demonstrated that Nia was eligible for adoption assistance at the time of her adoption and that the Adoption Assistance Program was not adequately explained to the Ferdinands. Such lack of explanation was a violation by the defendants of their affirmative duty to inform clients of the program and provided the extenuating circumstances necessary to allow the reopening of the plaintiff's case and, finally, the grant of adoption assistance. The permanent injunction requested by the plaintiff is, therefore, granted.

---

**6.** The fact, therefore, that Nia's special educational needs may not have been evident at the time of her adoption is not grounds for disqualification.