1999 SD 107

**In the Matter of**

**Rita LAWS,**

**and Concerning**

**Eli Laws–Rodriguez, an Adoptive Child, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES, Appellee.**

**No. 20700.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 1999.

Decided Aug. 11, 1999.

John A. Hamilton, South Dakota Advocacy Services, Sioux Falls, South Dakota, Attorney for appellant.

Mark Barnett, Attorney General, Gay Klima Tollefson, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellee.

MILLER, Chief Justice.

[¶ 1.] In this opinion we hold that the South Dakota Department of Social Services (DSS) did not err in denying requested retroactive adoption assistance subsidy payments.

## FACTS

[¶ 2.] Eli Laws–Rodriguez was born on May 1, 1987. His birth mother voluntarily terminated her parental rights. DSS received custody and placed him in foster care, awaiting adoptive placement. In October 1987 Eli was placed for adoption in Oklahoma with Laws and her then-husband Amado Rodriguez. At that time, the couple had seven other children, four of whom were adopted.[1] Eli's adoption process was finalized in November 1988.

[¶ 3.] Prior to placement, DSS determined that Eli was a special needs child; thus, he was eligible for an adoption assistance subsidy.[2] On the date of Eli's adoption placement, Laws and Rodriguez entered into an adoption assistance subsidy agreement with DSS that provided for a maintenance subsidy in the amount of $157 per month to cover the costs of Eli's daily needs.[3] In 1988 and 1989 the parties signed subsequent agreements, which, again established the monthly maintenance subsidy amount at $157. The agreements required the adoptive parents to inform DSS of any changes in the child's needs. At the time the three agreements were signed, Eli showed no signs of the disabilities or the developmental delays associated with his known risk factors.[4] Moreover, prior to 1990, Laws failed to notify DSS of any changes in Eli's condition.[5]

[¶ 4.] However, in 1990 Laws became aware that Eli was mildly mentally retarded, severely speech delayed, and severely speech impaired. She informed DSS of such changes in Eli's condition and requested an increase in his monthly maintenance subsidy. In October 1990 the parties entered into another subsidy agreement, which contained the caveat, "we sign this contract with the knowledge that we are in the process of negotiating a higher subsidy for Eli's needs." DSS subsequently increased Eli's monthly subsidy to $187.55, the maximum subsidy amount allowed. DSS has since increased Eli's monthly maintenance subsidy to $370.45.[6]

1. Two of the adopted children had previously received adoption assistance subsidies.

2. Eli's status as a special needs child, pursuant to ARSD 67:14:14:02, was based upon a number of factors including: (1) race; (2) prenatal exposure to alcohol; (3) unknown paternity; (4) rape conception; (5) inadequate prenatal care; (6) prenatal exposure to marijuana and tobacco; and (7) four half-siblings in foster care with alcohol-related disabilities.

3. Eli also receives a medical subsidy, which provides him with full Medicaid coverage. This subsidy is not at issue here.

4. At the time of Eli's adoption, the family lived in Oklahoma. As part of an interstate compact regarding adoption assistance agreements, the Oklahoma Department of Social Services conducted home visits with the family. During the visits Eli showed no disabilities or developmental delays. Moreover, the family failed to express any concerns regarding Eli's development and did not indicate any change in his status.

5. Laws claims she was concerned about Eli's symptoms of hyperactivity and speech delay when Eli was eight, nine or ten months of age. She claims that she failed to share these concerns with DSS, because she believed it would make no difference to an unreceptive DSS.

[¶ 5.] In October 1997 Laws requested that DSS pay retroactive adoption assistance subsidies for the years 1987 to 1990, claiming that Eli should have been entitled to the maximum monthly maintenance subsidy amount instead of the $157 monthly subsidy amount paid.[7] Laws alleged that DSS owed total retroactive payments in the amount of $1,049.58. DSS denied the request. Subsequent to an administrative hearing where the denial was affirmed, Laws appealed to the circuit court, which affirmed the DSS decision. Laws appeals.

## DECISION

**[¶ 6.] DSS did not err in denying Laws retroactive adoption assistance subsidy payments.**

[¶ 7.] The Adoption Assistance and Child Welfare Act of 1980, Title IV–E of the Social Security Act, provides federal funding to states to advance the adoption of special needs children. *See* 42 U.S.C. §§ 670–681 (1998). DSS administers the South Dakota adoption assistance program and has adopted regulations to implement such program. *See* SDCL 28–1–64; ARSD 67:14:14. Laws alleges that DSS failed to properly administer the program when she adopted Eli;[8] therefore, she is entitled to retroactive reimbursement in the amount of $1,049.58. She specifically claims that the $157 monthly maintenance subsidy was inadequate and that DSS should have awarded Eli a subsidy amount equal to the maximum foster care rate at the time the adoption assistance agreements were signed. We disagree.

[¶ 8.] Both Title IV–E and DSS regulations address the adoption assistance agreement and the manner in which subsidy amounts must be determined. *See* 42 U.S.C. § 673(a)(3); ARSD 67:14:14:05. However, we find, and DSS determined, that neither provides for the retroactive payment of adoption assistance maintenance subsidies. Moreover, Laws has failed to provide any authority to the contrary.[9] Simply stated, no support exists for Laws' claim for retroactive relief.

[¶ 9.] Therefore, we conclude that DSS did not err when it determined that "neither the South Dakota legislature nor the Department have implemented a policy allowing retroactive payment to supplement adoption assistance subsidies; [therefore], no authority exists to grant [Laws'] re-

6. This amount is above the maximum allowed for a child of Eli's age. However, due to Eli's severe disabilities, DSS has allowed him to receive the maximum amount allowed for a child age fifteen to seventeen. Throughout the years, Eli has been diagnosed with fetal alcohol exposure, attention deficit disorder, excessive compulsive disorder, severe and permanent speech delays and impairments, severe learning disabilities, bed wetting, and open-mouth drooling.

7. According to the agreement, the monthly maintenance subsidy cannot exceed the basic foster care rate as established by DSS. In 1987 the basic foster care rate was determined to be $181.97. In 1988 the rate increased to $187.55 and remained the same in 1989 and 1990.

8. She specifically claims that DSS illegally used a means test to determine Eli's maintenance subsidy amount, provided her with misinformation concerning the maximum amount for which Eli was eligible, failed to negotiate with her, and incorrectly informed her that the maintenance subsidy amount could never change.

9. The only published opinion to which Laws cites in her brief fails to support her claim. *See Ferdinand v. Department for Children & Their Families,* 768 F.Supp. 401, 402 n. 2 (D.R.I.1991) (stating that, although the parties had not briefed the issue of retroactive relief, such relief would be barred by the Eleventh Amendment; therefore, "the payments ... will continue but there will be no retroactive payments"). Moreover, the other "authority" (an initial order from the Tennessee Department of Human Services Appeals and Hearings Office, an initial decision from the Georgia Office of State Administrative Hearings, a proposed decision from the California DSS, an undated entry of judgment from the Court of Common Pleas in Ohio, and a United States Department of Health and Human Services policy interpretation question) to which she cites is also inadequate support for her claim for retroactive payments.

quest for a retroactive adoption assistance payment of $1,049.58."

[¶ 10.] Affirmed.

[¶ 11.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

