794 So.2d 739 (2001)
Bill L. GREENFIELD and Karen L. Greenfield, Appellants,
v.
Florida DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 1D00-5001.
District Court of Appeal of Florida, First District.
September 24, 2001.
*740 Bill L. Greenfield and Karen L. Greenfield, pro se.
Eric D. Schurger, Assistant District Legal Counsel, Department of Children and Family Services, Pensacola, for appellee.
WOLF, J.
This case involves a dispute over whether a postadoption determination of eligibility for adoption maintenance subsidies under the Adoption Assistance and Child Welfare Act of 1980, Title IV-E of the Social Security Act ("Title IV-E"), carries with it an entitlement to a retroactive award of adoption maintenance subsidies back to the earliest date of eligibility for the child. We agree with the appellee, the Department of Children and Family Services (Department), that neither federal nor Florida law requires the payment of such retroactive benefits.
The adoption assistance program created by Title IV-E is a cooperatively run federal-state program through which the federal government provides participating states with funding to advance the adoption of special needs children. The Department is charged with the duty of administering Florida's Title IV-E adoption assistance program. See § 409.166, Fla. Stat. (1999). Generally, for a child to be declared Title IV-E eligible and to receive adoption maintenance subsidies under the terms of the program, an adoption assistance agreement between the parents and the state agency charged with administering the program must be signed and in effect at the time of or prior to the final decree of adoption. See 45 C.F.R. § 1356.40(b)(1)(2001). However, in two successive policy interpretation statements issued by the United States Department of Health and Human Services it was made clear that a determination of entitlement to Title IV-E adoption assistance could be made after the finalization of the adoption based on "extenuating circumstances" which include whether the adoptive parents were informed at the time of the adoption of the availability of adoption assistance for their special needs child. See Policy Interpretation Question, Log No. ACF-PIQ-88-06, U.S. Department of Health and Human Services, Children's Bureau, Issued December 2, 1988; Policy Interpretation Question, Log No. ACF-PIQ-92-02, U.S. Department of Health and Human Services, Administration for Children and Families, Issued June 25, 1992 [hereinafter "PIQ 92-02"].
Appellants, Bill and Karen Greenfield, adopted two children from Catholic Charities in the 1980's. The children were born in 1985 and 1988, respectively. Both children were placed with appellants as infants, and the adoption of each was finalized within a year of placement. Appellants were not fully informed at the time of either adoption of the existence of the adoption assistance program and did not have complete information on the biological parents prior to the finalization of the adoptions. Both children later developed *741 physical and emotional disorders which required, and continue to require, intensive skilled custodial care.
Appellants filed a formal application for adoption assistance for both children in December 1999. The Department processed the request and granted adoption maintenance subsidies for both children effective February 2, 2000, the date upon which the children's adoption assistance agreements were approved; however, the Department classified the children as non-Title IV-E eligible. This effectively meant that the children would not be eligible for Medicaid coverage outside the State of Florida. Because the children then resided with appellants in Georgia, appellants challenged the Department's denial of Title IV-E eligibility; they also requested retroactive adoption maintenance subsidies for both children back to the earliest date of eligibility.
Following a hearing before a Department hearing officer, appellants' claim that their adopted children should be declared Title IV-E eligible was granted, but the Department denied their request for retroactive adoption maintenance subsidies. The hearing officer concluded that appellants could not receive retroactive adoption subsidy payments because federal law did not require the payment of retroactive assistance, and no provision existed under Florida law that would allow for the payment of retroactive benefits.
On appeal, appellants contend that the declaration of Title IV-E eligibility for their children should logically carry with it an accompanying award of retroactive benefits back to the earliest dates of eligibility for both children. Appellants argue that federal law allows for such awards of retroactive benefits and that the Department's denial of such benefits constituted an abuse of the agency's discretion. While we agree that federal law gives the states discretion on the issue of whether to award retroactive benefits to children who are declared Title IV-E eligible after adoption, we conclude that the legislature in this state has chosen not to do so.
The federal statute creating the adoption assistance program states that the state agency administering the program "may make adoption assistance payments to ... parents [with children who meet the requirements of the program], directly through the State agency or through another public or nonprofit private agency, in amounts so determined." 42 U.S.C. § 673(a)(1)(B)(ii)(2001) (emphasis added). Contrary to appellants' argument, PIQ 92-02 does not require states to pay retroactive adoption maintenance subsidies, but in fact specifically recognizes the existence of a state's discretion in choosing whether or not to pay retroactive adoption assistance in certain cases:
If a State chooses to pay adoption assistance retroactively from the earliest date of the child's eligibility in accordance with Federal and State statutes, regulations and policies, the State may claim Federal financial participation for this expenditure.
Response to Question 8 in PIQ 92-02 (emphasis added).
In Florida, the statute implementing the Title IV-E adoption assistance program contains no specific provision authorizing an award of retroactive adoption maintenance subsidies. See § 409.166, Fla. Stat. (1999). In fact, the legislative intent as stated in the statute indicates that the legislature intended to restrict the payment of adoption subsidies only to those circumstances where placement could not be made without subsidy. See § 409.166(1), Fla. Stat. (1999). Both of appellants' children were actually placed without subsidy; therefore, monetary assistance *742 from the state was not a necessary condition to their placement with an adoptive family. Payment of retroactive adoption assistance in these circumstances would not be in keeping with the stated intent behind Florida's adoption assistance program.
One provision in the statute implementing the Title IV-E program in Florida does specifically provide for the payment of retroactive reimbursement up to $1000 of nonrecurring adoption expenses. See § 409.166(6), Fla. Stat. (1999). The fact that the legislature included this provision authorizing retroactive payment for that purpose and not any other indicates that it did not intend to authorize retroactive adoption assistance other than as provided. See Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 85 (Fla.2000) ("Under the principle of statutory construction, expressio unius est exclusio alterius, the mention of one thing implies the exclusion of another.").
Given that neither federal nor Florida law mandates the payment of retroactive adoption maintenance subsidies back to the earliest date of eligibility, the hearing officer's denial of an award of such benefits in this case did not constitute reversible error under the applicable standard of review. Although the Department correctly points out that no Florida case law on point exists, the Department's position is supported by the case law it cites from other jurisdictions. In Laws v. South Dakota Dep't of Soc. Servs., 598 N.W.2d 554 (S.D.1999), the South Dakota Supreme Court held that an adoptive parent could not obtain retroactive adoption maintenance subsidy payments because neither Title IV-E nor South Dakota law provided for the payment of such retroactive benefits to adoptive parents. See id. at 556. Although the court in Gruzinski v. Dep't of Pub. Welfare, 731 A.2d 246 (Pa. Commw.Ct.1999), a case relied on by appellants in their brief, awarded Title IV-E adoption maintenance subsidies to a special needs child retroactive to the earliest date of eligibility, it did so based on language contained in Pennsylvania's adoption assistance law which the court felt mandated such an award. See id. at 257-58. No similar provision appears in Florida law. As such, the Gruzinski case does not constitute persuasive authority in this state.
Appellants also argue that the denial of retroactive adoption maintenance subsidies to their children denies their children equal access to assistance and is discriminatory. To the extent this argument can be read as an assertion that the denial of retroactive benefits violated appellants' children's right to equal protection of the law, such an argument is without merit. The stated legislative intent in the statute implementing the Title IV-E adoption assistance program in Florida provides a rational basis for treating special needs children in foster care differently than special needs children who have already been adopted. As the United States Supreme Court recently reiterated in Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational." Id. at 964.
In this case, the Florida legislature clearly indicated in the statute implementing Florida's Title IV-E adoption assistance program that "[i]n providing subsidies for children with special needs in foster homes, it is the intent of the Legislature to reduce state expenditures for long-term foster care." § 409.166(1), Fla. Stat. (1999). The legislature further stated that "[i]t is also the intent of the *743 Legislature that placement without subsidy be the placement of choice unless it can be shown that such placement is not in the best interest of the child." Id. These statements, taken together, indicate that one of the purposes behind the adoption assistance program in Florida is the conservation of state resources to be accomplished through the adoption out of foster care of special needs children. Not authorizing retroactive adoption maintenance subsidies clearly serves the stated goal of conserving the state's financial resources. "State action subject to rationalbasis scrutiny does not violate the Fourteenth Amendment when it rationally furthers the purpose identified by the State." Garrett, 121 S.Ct. at 964.
For the reasons expressed in this opinion, the Department did not abuse its discretion by denying appellants' request for retroactive adoption maintenance subsidy payments for their two adopted special needs children back to the earliest date of eligibility. We, therefore, affirm.
BARFIELD and LEWIS, JJ., concur.