639 S.E.2d 821

In the Matter of the ADOPTION OF JAMISON NICHOLAS C., by Charles M. and Twila M.

No. 33079.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2006.

Decided Nov. 13, 2006.

---

Darrell V. McGraw, Jr., Attorney General, Rebecca Stollar Johnson, Assistant Attorney General, Charleston, for WV DHHR.

Charles Walker Ferguson, IV, Ferguson & Ferguson, Wayne, for Charles M. and Twila M.

MAYNARD, Justice:

Appellant West Virginia Department of Health and Human Resources ("DHHR") appeals the December 5, 2005, order of the Circuit Court of Wayne County that required DHHR to grant to the appellees, Charles M. and Twila M., medical assistance for the care of their adopted son, Jamison Nicholas C.[1] For the reasons set forth below, we affirm the circuit court.

---

1. We follow our long-standing tradition herein of using initials in cases involving minors and sensitive facts.

2. Attached to the appellees' pleading to this Court is a copy of a letter from Debra Stultz, M.D. of United Health Professionals in Huntington, and dated January 15, 1999, which states that "Jamison [C.] has been treated under my services since 11/9/98. He has been diagnosed with Depressive disorder, NOS; and ADHD."

I.

FACTS

Jamison Nicholas C. was born April 22, 1996, to Crystal C. and Clyde C. Crystal C. died of cancer on September 9, 1998, while she and Jamison were living with her parents, the appellees. Prior to that time, Crystal C. and Clyde C.'s marriage, which was volatile and involved many domestic disputes, had ended and Clyde C. had become a fugitive from justice. As a result, Clyde C. had very little contact with Jamison.

On the day that Crystal C. died, DHHR was granted emergency custody of Jamison on the grounds that Jamison would be in imminent danger if his father gained physical and legal custody of him. At a subsequent preliminary hearing, on September 18, 1998, Jamison was adjudged to be neglected, abused, and abandoned by his father. Upon the recommendation of DHHR, the court rescinded DHHR's temporary custody of Jamison and granted his full legal care, custody and control to the appellees.

Shortly thereafter, Jamison was diagnosed with Attention–Deficit Hyperactivity ("ADHD") and depressive disorders.[2] On April 11, 2000, the appellees filed both a petition to adopt Jamison and a petition to terminate the parental rights of Clyde C.[3] By order dated September 19, 2000, the circuit court terminated Clyde C.'s parental rights to Jamison. After a hearing, the appellees' adoption petition was granted by order dated October 13, 2000, and entered February 15, 2001.

Subsequent to the adoption, Jamison was diagnosed with Asperger's Syndrome. From September 9, 1998, until February 2004, DHHR provided medical assistance to Jamison by way of either Federal Medicaid Assistance or the State Children's Health Insur-

---

3. Clyde C. was convicted in Wayne County Circuit Court of Grand Larceny on October 13, 1999. He was subsequently sentenced to the penitentiary for a period of not less than one year nor more than ten years. Thereafter, he was convicted of Escape and sentenced for a period of one year to run consecutively with his Grand Larceny sentence.

ance Program. In February 2004, DHHR notified the appellees that Jamison was no longer eligible for medical assistance due to an increase in the appellees' household income.

In January 2005, the appellees filed a motion with the circuit court to amend the final order of adoption to provide that Jamison continue to be eligible for a medical card issued by DHHR. After a hearing on the matter, the circuit court granted the motion and ruled that the adoption order would be amended to provide that DHHR shall enter into an adoption assistance agreement with the appellees for medical assistance to be provided to Jamison. The circuit court's order was based on the following conclusions of law:

2.  Jamison became a ward of the state when placed in temporary custody of WVDHHR upon an adjudication of abuse and neglect and upon a finding that it would be contrary to Jamison's best interest to return him to his father's custody; the DHHR properly placed the child with a responsible relative; *West Virginia Code*, § 49–6–3;

3.  Jamison had a significant relationship with his maternal grandparents; there existed emotional ties between the child and [Charles and Twila M.]; the DHHR recognized [Charles and Twila M.] as prospective permanent adoptive parents; *Adoption and Safe Families Act of 1997* (Pub. L. 105–89);

4.  Jamison's physical, mental, medical, and emotional disabilities qualify him as a special needs child as defined in Section 473(c) of the *Adoption Assistance and Child Welfare Act of 1980,* (Pub. L. 96–272); See 42 U.S.C. § 673(c);

5.  The DHHR had an affirmative duty to fully explain all available assistance programs to potential adoptive parents; the prospective adoptive parents cannot waive adoption assistance without full knowledge and information to assist them in making an informed decision to proceed by private adoption as opposed to an assisted adoption; 42 C.F.R. 1356.40(f); *Ferdinand v. Dept. for Children and [Thier] Families, State of Rhode Island,* 768 F.Supp. 401 ([D.R.I.]1991);

6.  Jamison was a special needs child while in the temporary custody of the WVDHHR even though his special needs were not evident when he was two (2) years old; Jamison would have been eligible for Title IV–E adoption assistance when placed with [Charles and Twila M.] even though the Department never discussed this with [Charles and Twila M.]; the subsequent determination as a special needs child constitutes changing circumstances relevant to the period readjustment provisions of 42 U.S.C. § 673(a)(3) and (4), as discussed in *Ferdinand,* 768 F.Supp. 401, *supra;*

7.  The State Department of Health and Human Resources must actively seek ways to promote the adoption assistance programs; 42 C.F.R. 1356.40(f);

8.  It is the child's needs, and not the adoptive parent's needs, which determines eligibility for adoption assistance of a special needs child; *Ferdinand,* 768 F.Supp. 401, *supra;*

9.  The failure of the WVDHHR to fully advise [Charles and Twila M.] of available adoption assistance or the risks of jeopardizing Jamison's eligibility by proceeding with a private adoption, and the fact that the Department continued to provide medical assistance throughout the process, constitutes extenuating circumstances that existed at the time of placement with [Charles and Twila M.], and before adoption, which requires the matter to be reopened consistent with the findings in *Ferdinand vs. Rhode Island,* Id.

DHHR now appeals the circuit court's order.

## II.

### STANDARD OF REVIEW

■  The question before us concerns the proper construction of the relevant law and its application to the facts. Therefore, we review the circuit court's order *de novo. See* Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank,* 198 W.Va. 329, 480 S.E.2d 538 (1996) (holding in part that "[q]uestions of law are subject to a *de novo* review").

## III.

### DISCUSSION

The Federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670—670b (2000 & 2003 Supp.), an amendment to Title IV–E of the Social Security Act, provides for the adoption of children with special needs. According to a policy statement issued by the United States Department of Health and Human Services ("DHHS"),

> The [Act's] legislative history indicates that Congress was concerned primarily with moving children in State foster care systems into permanent adoptive homes when appropriate. The title IV–E adoption assistance program, therefore, was developed to provide permanency for children with special needs in public foster care by assisting States in providing ongoing financial and medical assistance on their behalf to the families who adopt them.

*Policy Interpretation Question,* Log No. ACYF–CB–PA–01–01, U.S. Department of Health and Human Services, Children's Bureau, Issued January 23, 2001 (footnote omitted). Pursuant to the federal act, each state is to develop an approved plan to administer adoption assistance. 42 U.S.C. § 673.

The applicable plan in West Virginia for administering the federal act is found in W.Va.Code § 49–2–17 (2000),[4] which provides in relevant part:

> From funds appropriated to the department of health and human resources, the secretary shall establish a system of assistance for facilitating the adoption or legal guardianship of children. An adoption subsidy shall be available for children who are legally free for adoption and who are dependents of the department or a child welfare agency licensed to place children for adoption. A legal guardianship subsidy shall not require the surrender or termi-

nation of parental rights. For either subsidy, the children must be in special circumstances either because they:

> (a) Have established emotional ties with prospective adoptive parents or prospective legal guardians while in their care; or

> (b) Are not likely to be adopted or become a ward of a legal guardian by reason of one or more of the following conditions:

> (1) They have a physical or mental disability;

> (2) They are emotionally disturbed;

> (3) They are older children;

> (4) They are part of a sibling group;

> (5) They are a member of a racial or ethnic minority; or

> (6) They have any combination of these conditions.

> The department shall provide assistance in the form of subsidies or other services to parents who are found and approved for adoption or legal guardianship of a child certified as eligible for subsidy by the department, but before the final decree of adoption or order of legal guardianship is entered, there must be a written agreement between the family entering into the subsidized adoption or legal guardianship and the department. Adoption or legal guardianship subsidies in individual cases may commence with the adoption or legal guardianship placement, and will vary with the needs of the child as well as the availability of other resources to meet the child's needs.

As set forth above, the circuit court found that Jamison's adoption met the requirements of the federal adoption assistance act and W.Va.Code § 49–2–17, so that DHHR is obligated to provide assistance to the appellees in the form of medical assistance for Jamison.

---

4. This Court has indicated that the goal of W.Va. Code § 49–2–17,

> is to encourage foster parents not to treat the children placed in their care as an income producing commodity, but rather to love their foster children as their own. The Legislature wants foster parents to know that if they become attached to a child in their care, the bureaucrats will not come and take the child

away. Presumptively, if a child is in a loving and caring foster home, the child will be harmed by being removed from that home and placed in a strange, unknown home. The state, therefore, has implemented a policy encouraging foster parents to adopt their foster children.

*State ex rel. Treadway v. McCoy,* 189 W.Va. 210, 213, 429 S.E.2d 492, 495 (1993).

DHHR now challenges the circuit court's order on several grounds. First, according to DHHR, because Jamison was not in the State's custody at the time of his adoption, he is not entitled to assistance. DHHR explains that at no point after legal and physical custody of Jamison was granted to the appellees was DHHR involved in any legal action in regards to Jamison. Essentially, it is DHHR's position that the purpose of the federal adoption assistance act is to facilitate the adoption of foster children, and Jamison was never a foster child.

We find that DHHR's argument has no merit. W.Va.Code § 49–2–17 provides that assistance is available for facilitating either the adoption *or legal guardianship* of children. At the time the appellees were granted full legal custody, control and care of Jamison, on September 18, 1998, DHHR had temporary legal custody of him.[5] Therefore, per the provisions of the statute, Jamison was at one point a "dependent" of DHHR.

Further, we believe that prior to the circuit court's granting of full care, custody, and control of Jamison to the appellees, DHHR knew or should have known that Jamison was a potential special needs child. By this time, Jamison, who was approaching two and one-half years of age, had been adjudicated a neglected, abused, and abandoned child. Also, he likely witnessed a great deal of domestic turmoil. In addition, he had suffered the death of his mother. Finally, within two months of September 18, 1998, Jamison began mental health treatment, and shortly thereafter was diagnosed with a depressive disorder and ADHD, qualifying him as a special needs child under W.Va.Code § 49–2–17.

■ Second, DHHR asserts that because Jamison was adopted privately, it had no duty to inform the appellees of the availability of assistance. We do not believe that the fact that Jamison's adoption was private is of legal significance under these specific facts. This Court has held that, "[t]he manner in which a state administers a federal assistance program must be consistent with federal law." Syllabus Point 1, *Harrison v. Gins-*

*berg,* 169 W.Va. 162, 286 S.E.2d 276 (1982). Because W.Va.Code § 49–2–17, is this State's codification of the federal adoption assistance act, we look to federal law to determine how best to apply our statute.

■ According to 45 C.F.R. § 1356.40(f) (2005), "[t]he State agency must actively seek ways to promote the adoption assistance program." This duty is further explained in a DHHS policy statement as follows:

The State title IV–B/IV–E agency is required to actively seek ways to promote the adoption assistance program. This means that it is incumbent upon the State agency to notify prospective adoptive parents about the availability of adoption assistance for the adoption of a child with special needs. There is no prescribed way in which promotion of the program must be accomplished. One example would be to alert potential adoptive parents during a recruitment campaign for adoptive homes (websites, newspapers, flyers, etc). Another example would be to alert every prospective adoptive parent who inquires to the State agency about adoption.

*Policy Interpretation Question,* Log No. ACYF–CB–PA–01–01, U.S. Department of Health and Human Services, Children's Bureau, Issued January 23, 2001 (footnote omitted). This policy statement further indicates,

However, in circumstances where the State agency does not have responsibility for placement and care, or is otherwise unaware of the adoption of a potentially special needs child, it is incumbent upon the adoptive family to request adoption assistance on behalf of the child. It is not the responsibility of the State or local agency to seek out and inform individuals who are unknown to the agency about the possibility of title IV–E adoption assistance for special needs children who also are unknown to the agency. This policy is consistent with the intent and purpose of the statute, and that is to promote the adoption of special needs children who are in the public foster care system.

5. A guardian is defined as "[o]ne who has the legal authority and duty to care for another's person or property, esp. because of the other's

infancy[.]" *Black's Law Dictionary* 566 (Abridged 7th ed. 2000).

*Id.* Based on this DHHS policy, we now hold that under the Federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670—679b (2000 & 2003 Supp.), and W.Va.Code § 49–2–17 (2000), the West Virginia Department of Health and Human Resources has an affirmative duty to notify prospective adoptive parents and prospective legal guardians of the availability of assistance for the care of a potentially special needs child where the Department has responsibility for placement and care of the child or is otherwise aware of the child.

█ When we apply this law to the instant facts, we find that DHHR had a duty to the appellees both at the time the appellees became responsible for the care, custody, and control of Jamison and at the time of Jamison's adoption to notify them of available assistance. The facts show that DHHR had temporary legal custody of Jamison for ten days. Also, DHHR was aware or should have been aware that Jamison was a potentially special needs child due to his circumstances. Further, DHHR was aware that the appellees were granted care, custody and control of Jamison. Finally, DHHR continued to provide financial assistance to the appellees for Jamison's care from the time DHHR was granted temporary custody of Jamison until several years after his adoption by the appellees. While we agree with DHHR that it is not responsible for seeking out and informing individuals who are unknown to it about the possibility of assistance to those who adopt or who become legal guardians of a special needs child, in the instant case the appellees and Jamison were clearly known to DHHR.

█ In its final argument to this Court, DHHR contends that the appellees are not eligible for assistance because the federal adoption assistance act and W.Va.Code § 49–2–17 require that before assistance can be rendered, an adoption assistance agreement must be signed and in effect at the time of or prior to the final decree of adoption. We do not believe that the absence of such an agreement renders Jamison ineligible for assistance under the facts of this case.

█ According to *Policy Interpretation Question,* Log No. ACF–PIQ–92–02, U.S. Department of Health and Human Services, Children's Bureau, Issued June 25, 1992,[6] the State agency's failure to notify adoptive parents of the availability of assistance may be considered an "extenuating circumstance" which justifies a fair hearing and a subsequent grant of medical assistance.[7] Therefore, we find that DHHR's failure to inform the appellees of the availability of assistance, both at the time they were granted care, custody, and control of Jamison and at the time they adopted Jamison, constitutes extenuating circumstances under the federal policy statement above, and that these extenuating circumstances permitted the appellees to reopen this matter and to receive medical assistance.

## IV.

## CONCLUSION

In sum, we find that Jamison is eligible for medical assistance under W.Va.Code § 49–2–17. The facts show that Jamison was a dependent of DHHR prior to the time the appellees were granted full legal care, custody, and control of Jamison and prior to the time the appellees adopted him. Also, Jamison meets the definition of a special needs

---

6. According to the applicable portion of *Policy Interpretation Question,* Log No. ACF–PIQ–92–02,

   **QUESTION 3:**
   Would grounds for a fair hearing exist if the State agency fails to notify or advise adoptive parents of the availability of adoption assistance for a child with special needs?
   **RESPONSE:**
   Yes. The very purpose of the title IV–E adoption assistance program is to encourage the adoption of hard-to-place children. State notification to potential adoptive parents about its existence is an intrinsic part of the program and the incentive for adoption that was intend-

ed by Congress. Thus, notifying potential adoptive parents is the State agency's responsibility in its administration of the title IV–E adoption assistance program. Accordingly, the State agency's failure to notify the parents may be considered an "extenuating circumstance" which justifies a fair hearing.

7. We note that this policy statement was withdrawn by the Department of Health and Human Services on January 23, 2001. However, it was in effect at all times relevant to the issue in this case, specifically when the appellees were granted care, custody, and control of Jamison and when they petitioned to adopt Jamison.

child by virtue of his mental and/or emotional disabilities. In addition, DHHR had a duty to inform the appellees about the availability of assistance under W.Va.Code § 49–2–17 because DHHR had legal custody of Jamison for a period of ten days and thereafter continued to be aware of his and the appellees' circumstances. Finally, the failure of DHHR to inform the appellees of availability of medical assistance for Jamison constituted extenuating circumstances for the court below to subsequently revisit the issue and to require medical assistance to Jamison. For these reasons, we conclude that the circuit court committed no legal error in ordering DHHR to enter into an adoption assistance agreement for medical assistance with the appellees. Therefore, the circuit court's December 5, 2005, order is affirmed.

Affirmed.